UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STARVONNA HARRIS, et al.,

Plaintiffs,

v.

BEST BUY STORES, L.P.,

Defendant.

Case No. 17-cv-00446-HSG

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF JONATHAN STRICKLAND'S CLAIMS AND GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF STARVONA HARRIS'S PAGA CAUSE OF ACTION BASED ON OVERTIME WAGES**

Re: Dkt. No. 91, 58

Pending before the Court are Defendant Best Buy Stores, L.P.'s motion for summary judgment on Plaintiff Jonathan Strickland's claims, and Defendant's motion to dismiss Plaintiff Starvona Harris's seventh cause of action from Plaintiffs' second amended complaint. *See* Dkt. Nos. 91 ("Mot. Summ. J."), 58 ("Mot. Dismiss"); *see also* Dkt. No. 55 ("SAC"). Briefing on both motions is complete, revealing substantial overlap. *See* Dkt. Nos. 96 ("Opp. Summ. J."), 101 ("Reply Summ. J."); Dkt. Nos. 63 ("Opp. Dismiss"), 66 ("Reply Dismiss"). In view of that overlap, the Court heard argument on both motions on January 25, 2018. For the reasons below, the Court **GRANTS** Defendant's motion for summary judgment of Strickland's claims, and **GRANTS** Defendant's motion to dismiss Harris's seventh cause of action under the Private Attorneys General Act ("PAGA") to the extent that Harris's PAGA cause of action is based on her claim to overtime wages.

## I.    BACKGROUND

This is Plaintiff Harris's second action against Defendant in this Court. Harris filed a putative class action against Defendant on February 11, 2015, asserting various wage and hour

claims under California and federal law.  *See* Case No. 4:15-cv-00657-HSG ("the Prior Federal Action"), Dkt. No. 1 ("Harris Compl.").[1]  On August 1, 2016, the Court granted in part and denied in part Defendant's motion for summary judgment.  Dkt. No. 102 ("the Prior Summary Judgment Order").  Specifically, the Court denied Defendant's summary judgment motion as to Harris's claim for failure to pay all overtime wages owed, insofar as that claim was based on Defendant's failure to properly calculate overtime on two of its employee bonus programs.  *See id.* at 8.

Defendant subsequently moved for reconsideration of the Prior Summary Judgment Order, arguing that Harris's overtime wage claim failed as a matter of law.  *See* Dkt. No. 106.  On reconsideration, the Court granted Defendant's motion for summary judgment as to Harris's claim for failure to pay overtime wages, dismissing that claim with prejudice.  Dkt. No. 124.[2]  Several of Harris's other claims, however, survived summary judgment.

Harris, now joined by Plaintiff Strickland, filed this action against Defendant on January 27, 2017.  *See* Dkt. No. 1-1 ("Compl.").  On April 13, 2017, Defendant moved to dismiss the first amended complaint ("FAC"), or alternatively, for judgment on the pleadings.  *See* Dkt. No. 24. The Court granted Plaintiffs' motion for leave to amend the complaint, and Plaintiffs filed the SAC on July 13, 2017.  *See* Dkt. Nos. 54, 55.  The SAC asserts seven claims for: (1) failure to pay overtime wages; (2) failure to make payments within the required time; (3) failure to provide proper itemized wage statements; (4) failure to provide reimbursements; (5) unfair competition; (6) failure to provide personnel file and employment records; and (7) violations of PAGA.  Only Strickland asserts claim one for failure to pay overtime wages.  *See* SAC at 14–15 & 14 n.1.  Only Harris asserts claims four, six, and seven.  *See id.* at 18–19, 21–14.  Plaintiffs both assert claims two, three, and five.  *See id.* at 15–18, 19–20.  Following the filing of the SAC, Defendant filed a motion to dismiss or strike Harris's seventh claim under PAGA, and moved for summary

---

[1] Any docket references to litigation events from the Prior Federal Action pertain to Case No. 4:15-cv-00657-HSG.

[2] The relevant factual background relating to Plaintiff Harris's claims remains unchanged from the Prior Federal Action.  The Court set forth that background in the Prior Summary Judgment Order, and incorporates from that order the unchanged facts and legal analysis.  In this order, the Court only discusses the facts and legal standards as necessary to address the new issues raised in the renewed motion to dismiss Harris's claims.

judgment on Strickland's claims.

## II. DISCUSSION

### A. Summary Judgment on Strickland's Claims

#### i. Relevant Facts

The basic facts are not in dispute. Strickland worked at a California Best Buy location from about September 29, 2013 to about October 15, 2014, when his employment was terminated. *See* Dkt. No. 91-2, Evidence Appendix ("EA") at 106, 204. While employed by Defendant, Strickland earned $13.00 per hour. *Id.* In addition to paying Strickland a higher hourly rate for overtime hours worked, Defendant maintained two bonus programs that pertain to the claims that Strickland asserts here. The first is a Monthly Short Term Incentive ("STI") Plan. The second is a Path To Excellence ("PTE") program, which gave employees points based on their performance.

#### a. Strickland's Monthly STI Bonus

Beginning in Defendant's Fiscal Year 2015, Strickland became eligible for Defendant's Fiscal Year 2015 Short Term Incentive ("STI") Plan. *Id.* at 257. The STI Plan calculated non-discretionary employee bonuses using the following formula:

$$= (\text{[The Employee's] Monthly Eligible Earnings}) \times (\text{Store All Channel Revenue Incentive Target \%}) \times (\text{Store All Channel Revenue Score}).$$

*Id.* at 257–58, 267, 271. An employee's monthly STI bonus was "tied to individual, store and Company performance." *Id.* at 261. The "employee's eligible earnings" component of that formula factored in both an employee's hourly pay and overtime pay for any overtime hours worked. *Id.* at 91–92, 267, 271. Defendant did not include PTE points in calculating the STI bonus's "eligible earnings" figure. *Id.* at 93. For FY 2015, the "Store All Channel Revenue Incentive Target Percentage" was 5% for Strickland's position. *Id.* at 257–58, 267, 271. Strickland earned STI bonuses for the months of March, May, and June. *Id.* Strickland's STI bonus for fiscal June 2015 was 5% of straight time pay and overtime premiums. *See id.* at 91–92, 258, 314–15. Strickland's June 2015 STI bonus was paid on August 8, 2014. Dkt. No. 96, Ex. C ("Strickland Decl.").

3

### b. Strickland's Path to Excellence ("PTE") Points

Pursuant to Defendant's PTE Points program, managers had discretion to recognize employees by awarding them "points." Employees could then use points to purchase gift cards, merchandise, and other items from a variety of vendors. SAC ¶ 17. Managers allotted PTE points to employees based on a range of factors, including length of service, discretionary on-the-spot recognition by managers, and completion of trainings. EA at 152, 163. Best Buy did not "force employees to either receive or redeem points." *Id.* at 152. Best Buy contracted with a vendor, BIG, to administer the PTE program. *Id.* Best Buy paid BIG $.05 for each point awarded. *Id.* Best Buy paid the taxes on the point awards, so that the tax on the value of PTE points did not decrease an employee's wages. *Id.* at 205. Strickland's wage statements explained: "taxes owed on the 'Points Rcvd GU' earnings are being paid for you, by Best Buy." *Id.* at 119. As of May 2014, Defendant stopped keeping track of which points were overtime-eligible and those that were not. *Id.* at 85–86. For the pay period of May 25, 2014 to June 7, 2014, Best Buy paid Strickland "$33.47 in points plus a gross up for tax purposes ('Points Revd GU') for that pay period," and "$1.31 in overtime for those points received ('Points Rcvd OT')." *Id.* at 205; *see also* Mot. Summ. J., Ex. A. The only week in which Strickland (1) qualified for the monthly STI bonus; (2) earned points; and (3) worked overtime hours was the week of June 1 to June 7, 2014. EA at 153.

Following Strickland's termination in October 2014, Strickland filed a state court lawsuit against Defendant. *See* Dkt. No. 24-1 at 13–14 ("the State Action").[3] Strickland brought the State Action in April 2015, asserting violations of Cal. Lab. Code §§ 203, 204, 212, 226(a), 450, 510, 1194, and 1199 for failure to: (1) "pay wages and/or overtime to plaintiff and all aggrieved employees"; (2) "provide accurate itemized wage statements"; (3) "set forth on employees' wage statements all applicable hourly rates in effect during the pay period"; and (4) timely pay a "sum certain at the time of termination or within seventy-two (72) hours of their resignation, and [] fail[ure] to pay those sums for thirty (30) days thereafter." *See id.* at 5–6, ¶¶ 23–25. The

---

[3] The Court **GRANTS** Defendant's request for judicial notice of the existence of Strickland's complaint and the judgment from the State Action. *See* Dkt. No. 24-1; *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Defendant does not seek to prove any disputed fact relating to the content of these documents. *See id.*

California Superior Court granted summary judgment as to all of Strickland's claims, dismissing those claims with prejudice in favor of Defendant. *See id.* at 13–14.

### ii. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

### iii. Analysis

Defendant moves for summary judgment on Strickland's claims on two primary grounds. First, Defendant argues that the doctrine of res judicata bars Strickland from reasserting claims that he unsuccessfully raised in the State Action. *See* Mot. Summ. J. at 1–2. Second, Defendant argues that Strickland's first claim for failure to pay overtime fails because Defendant properly calculated Strickland's regular rate of pay, and thus paid Strickland all the overtime he was owed. *See id.* at 9–18. Defendant contends that Strickland's other claims are derivative of his overtime wage claim, and thus fall with that claim. *See id.* at 18–23. The Court agrees with Defendant as to each ground.

### a. Res Judicata Precludes Strickland From Reasserting the Same Claims That He Raised in the State Action

Defendant argues that res judicata bars all of Strickland's claims, as these claims are substantively identical to those that Strickland asserted in the State Action. *See* Mot. Summ. J. at 1–2, 8–9.[4] Defendant claims that, at the very least, Strickland is precluded from bringing his federal claims because he had the *opportunity* to raise those claims in the State Action. *See* Dkt. No. 24 at 5. In response, Plaintiffs argue that Strickland's federal and state claims are sufficiently distinct for the purposes of res judicata. *See* Opp. Summ. J. at 5.

---

[4] Both Defendant and Plaintiffs incorporate arguments made in prior briefing on an earlier-filed motion to dismiss all of Strickland's claims. *See* Mot. Summ. J. at 1 (citing Dkt. No. 24); Opp. Summ. J. at 5.

United States District Court
Northern District of California

Neither party disputes that California law controls. *Adam Bros. Farming v. Cty. of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010). "Under California law, res judicata precludes a party from relitigating (1) the same claim, (2) against the same party, (3) when that claim proceeded to a final judgment on the merits in a prior action." *Id.* at 1148–49 (citing *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002)). Defendant here was named in Strickland's State Action, and the State Action terminated with a final judgment on the merits: summary judgment in favor of Defendant, and a dismissal of Strickland's claims with prejudice. *See* Dkt. No. 24-1 at 13–14.

"Two different causes of action are the same claim if they rise from the same invasion of a primary right. A plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Adam Bros. Farming*, 604 F.3d at 1149 (internal quotations and citations omitted). California courts have broadly construed the concept of a "primary right," finding:

> The fact that different forms of relief are sought in the two lawsuits is irrelevant. . . If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged . . . An issue may not be thus split into pieces.

*Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 409 (Ct. App. 2010) (quotations and alterations omitted). It is this indivisibility that is "[t]he most salient characteristic of a primary right." *Crowley v. Katleman*, 881 P.2d 1083, 1090 (Cal. 1994). In identifying a primary right, the Court's focus is on "the facts pleaded and injuries alleged. . . without regard to [Plaintiffs'] asserted theories of recovery." *Adam Bros. Farming*, 604 F.3d at 1149.

Strickland's federal and state court claims concern the same primary right. Strickland's state court complaint broadly asserted wage and hour violations that are substantively identical to those he now raises in the instant action. These violations include Defendant's failure to pay all overtime wages owed, to provide accurate wage statements, and to timely pay wages. *Compare* Dkt. No. 24-1 at 5–6, ¶¶ 23–25, *with* SAC ¶¶ 17, 19–20, 25, 31, 34–35. For instance, with regard to overtime, Strickland broadly pled in his state court complaint:

7

> Defendant has had a consistent policy of failing to pay wages and/or overtime to Plaintiff and all aggrieved employees. These employees were not paid at the proper overtime rate when they were working more than eight (8) hours in one day or forty (40) hours in one week, because Defendant failed to include all compensation earned during a pay period when calculating the regular rate of pay for overtime purposes.

Dkt. No. 24-1 at 9 ¶ 23. As here, that allegation pertains to Defendant's wrongful exclusion of all compensation earned from Defendant's calculation of the regular rate of pay. *See, e.g.*, SAC ¶ 17 ("Although the bonuses and incentives should have been taken into account when determining the regular rate of pay for overtime purposes, on information and belief Defendant failed to do so. This resulted in Plaintiff Jonathan Strickland [and other employees] not receiving all overtime compensation due to them."). Strickland pled with similar breadth his state court claims for failure to provide accurate itemized wage statements and failure to timely pay wages. *See* Dkt. No. 24-1 at 10 ¶ 24 ("Defendant . . . fail[ed] to accurately set forth on employees' wage statements all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . .."), ¶ 25 ("Defendant has failed to pay Plaintiff and other aggrieved employees a sum certain at the time of termination or within seventy-two (72) hours of their resignation, and have failed to pay those sums for thirty (30) days thereafter."). Those allegations mirror Strickland's identical claims in this action. *See* SAC ¶ 19 ("Defendant did not provide proper wage statements. . . the wage statements did not list the correct gross and net wages due, the correct hourly rates of pay, and the number of hours worked at those rates of pay. . ."), ¶ 20 ("[W]hen Plaintiffs. . . were discharged or resigned, Defendant did not pay them all wages due including, but not limited to, regular and/or unpaid overtime wages. ").

Plaintiffs fail to distinguish Strickland's federal and state court claims. To begin, a plain reading of Strickland's state court pleading belies Plaintiffs' portrayal of the State Action as pertaining to the sole issue of Defendant's wrongful award of PTE points instead of cash. *See* Opp. Summ. J. at 6–7. Strickland pled his prior allegations far more broadly than Plaintiffs suggest. In addition to claiming that the State Action raised a different harm, Plaintiffs also characterize the State Action as pertaining to a different time period (i.e., violations occurring on a weekly basis as opposed to a monthly one), and to a different actor (the specific individual "who

decided to pay points instead of cash"). *See* Opp. Summ. J. at 5–6. Again, Strickland's state court complaint on its face contravenes these claims. But even if Plaintiffs were correct, these fine factual distinctions do not create a meaningful *legal* difference. *See Villacres*, 117 Cal. Rptr. at 409. While Plaintiffs rely on *Brodheim v. Cry* for that proposition, that court considered facts far different from those presented here. *See* 584 F.3d 1262, 1268 (9th Cir. 2009). In *Brodheim*, the Ninth Circuit held that res judicata did not preclude the plaintiff from asserting a "procedural harm" distinct from an earlier alleged substantive injury, where the harms occurred respectively in 2001 and 2003, and the entities inflicting those harms were distinct individuals: a prison warden on the one hand, and a prison appeals coordinator on the other. *See id.*

Here, in contrast, both of Strickland's lawsuits identify the same harm (Defendant's wrongful and untimely overtime payments, and provision of inaccurate wage statements), that occurred within the same time period (Strickland's employment); by the same actor (Defendant). In addition, the Court in *Brodheim* stated that "if two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Id.* at 1268 (quoting *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612 (Ct. App. 1983)). Plaintiffs' instant claims are thus appropriately viewed as additional factual allegations that would otherwise support Strickland's earlier claims to relief.

Notably, Plaintiffs at no point dispute that Strickland *could have asserted* the instant claims in the State Action. *See* Dkt. No. 33 at 4; *Panos v. Great W. Packing Co.,* 134 P.2d 242, 243 (Ct. App. 1943) ("[R]es judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action . . . and should not be permitted to litigate it again to the harassment and vexation of his opponent."). Defendant terminated Strickland six months before he filed his state court lawsuit. *See* EA at 106. Thus, Strickland had ample opportunity to raise the instant claims against Defendant.

At oral argument, Plaintiffs contended that Strickland was unable to bring his instant claims in the State Action because he unaware at that time that Defendant wrongfully withheld his

monthly STI bonus. Plaintiffs at no point presented evidence to support that claim. Even if

Plaintiffs had done so, the Ninth Circuit rejected a similar argument in *Adam Bros. Farming*, 604

F.3d at 1149. In that case, the Ninth Circuit found it unimportant that the plaintiff's claim "could

not have been brought and did not exist" until after the plaintiff's prior state court action. Rather,

the court found that "[t]he particularities" of the plaintiff's federal and state claims were

"irrelevant" because those claims were "still based on the same underlying factual circumstances."

*Id.*

Plaintiffs cite several federal district court cases for the proposition that res judicata does

not bar a second wage and hour claim "where different primary rights are involved." The Court's

finding—that Strickland's federal and state claims concern the same primary right—distinguishes

those decisions. *See, e.g.*, *Prieto v. U.S. Bank Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 141891, *24–

26 (E.D. Cal. Sept. 30, 2012). Moreover, those cases are either factually distinguishable or

unpersuasive under the circumstances. *Accord Cancilla v. Ecolab Inc.*, No. C 12-03001 CRB,

2014 WL 2943237, at *4 (N.D. Cal. June 30, 2014) (explaining that the Ninth Circuit has more

broadly construed wage and hour claims for purposes of res judicata as compared to several

California district courts). Res judicata therefore precludes Strickland from bringing the currently-

asserted claims in federal court.

### b. There Is No Dispute of Material Fact Underlying Strickland's Overtime Wage Claim

Separately, Defendant moves for summary judgment on Strickland's second claim for

failure to pay overtime wages. Defendant argues that, as a matter of law, it properly excluded

from its calculation of the regular rate several "overtime premiums" earned by Strickland during

the week of June 1 to June 7, 2014, including: (1) a premium earnings payment for overtime hours

worked, for which Strickland received $4.745; (2) two meal break premiums, for which

Strickland received $1.02; (3) overtime on the PTE points received, for which Strickland received

$1.31;[5] and (4) a monthly STI bonus of 5% of Strickland's $4.745 overtime earnings, for which

---

[5] These meal and points premiums are coded respectively as "Meal Break OT" and "Points Rcvd OT" on Strickland's wage statement for the pay period running from May 25, 2014 through June

Strickland received $0.237. *See* Mot. Summ. J. at 6–7, 11–12. The parties' primary dispute concerns this last payment—specifically, whether Defendant properly excluded the $0.237 attributable to Strickland's monthly STI bonus in calculating the regular rate. *See id.*; 29 C.F.R. § 778.202(a).

In arguing that Defendant incorrectly calculated the regular rate, Plaintiffs contend that Defendant's claim improperly relies on federal interpretations of the Fair Labor Standards Act ("FLSA"). According to Plaintiffs, California law controls. *See* Opp. Summ. J. at 10–11. And even if the FLSA standard governs, Plaintiffs argue that non-discretionary production incentive bonuses, like Defendant's Monthly STI Plan, must be considered in calculating the regular rate. Plaintiffs contend that Defendant accordingly erred by excluding that portion of the monthly STI bonus that Defendant identifies as an "overtime premium." *Id.* at 11.

As set forth in the Prior Summary Judgment Order, California courts look to the FLSA in determining the standard for calculating overtime owed. *See* Dkt. No. 102 at 4–5. Under the FLSA, the regular rate is "the hourly rate actually paid for the normal, non-overtime workweek, and is obtained by dividing the weekly wage payable for the working of the scheduled workweek by the number of hours in such scheduled workweek." *Id.* at 5. "Bonuses which do not qualify for [statutory] exclusion. . . must be totaled in with other earnings to determine the regulate rate on which overtime pay must be based." *Id.* at 5 (quoting § 29 C.F.R. § 778.208).[6] 29 U.S.C.§ 207(e), sets forth these statutory exemptions, which include:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day of workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under

---

7, 2014. *See* EA 225. The premium overtime earnings payment is coded as "Overtime." *Id.*
[6] 29 C.F.R. § 778.202 states in relevant part that: "(a) Hours in excess of 8 per day or statutory weekly standard. Many employment contracts provide for the payment of overtime compensation for hours worked in excess of 8 per day or 40 per week. Under some contracts such overtime compensation is fixed at one and one-half times the base rate; under others the overtime rate may be greater or less than one and one-half times the base rate. If the payment of such contract overtime compensation is in fact contingent upon the employee's having worked in excess of 8 hours in a day or in excess of the number of hours in the workweek specified in section 7(a) of the Act as the weekly maximum, the extra premium compensation paid for the excess hours is excludable from the regular rate under section 7(e)(5) and may be credited toward statutory overtime payments pursuant to section 7(h) of the Act."

11

subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be. . . .

## 1. Strickland's Overtime Wage Claim

The key inquiry is whether Defendant improperly excluded from the regular rate that portion of the monthly STI bonus that is itself based on overtime earnings. Mot. Summ. J. at 7; Opp. Summ. J. at 13. Defendant contends that it need not include that "overtime premium" in calculating Strickland's regular rate of pay under the FLSA. Mot. Summ. J. at 7. Arguing that "the entire Monthly STI bonus must be included in the regular rate of pay," Opp. Summ. J. at 13, Plaintiffs rely primarily on the Ninth Circuit's holding in *Brennan v. Valley Towing Co.*, 515 F.2d 100, 107–08 (9th Cir. 1975). In *Brennan*, the Ninth Circuit evaluated an overtime compensation arrangement where employees remaining on duty "after regular working hours would be compensated either by a flat rate payment of $3.00 per hour, or by being permitted to retain 25%" of any gross earnings. 515 F.2d 100 at 103–04. Employees could choose which of these two forms of compensation they preferred. The district court upheld the employer's compensation plan as valid under the FLSA, and excluded the extra compensation paid under the plan in its calculation of the regular rate. *See id.*

On appeal, the *Brennan* court affirmed the district court's exclusion of the overtime arrangement from its calculation of the regular rate under 29 U.S.C. § 207(e). *See id.* at 104, 107. So doing, the Ninth Circuit defined the key inquiry as whether, in "the district court's discretion," the "agreements providing for higher hourly pay for afterhours work were primarily in the nature of overtime pay agreements rather than production incentive arrangements or night shift differentials more properly thought of as part of normal pay." *Id.* at 108. The Ninth Circuit continued:

> We believe that there was sufficient evidence in the record for the district judge to conclude that the higher hourly pay for afterhours work was both conceived by the company and perceived by the employees as a reward for putting in hours beyond the established workweek. Consequently, the court below properly failed to include pay under these afterhours compensation agreements as part of normal, regular pay to be considered in computing the regular hourly rate.

*Id.* at 108–09 (defining the inquiry as whether "under the actual facts of the company's compensation plan, [] certain payments [should] be viewed as normal income or overtime

12

United States District Court
Northern District of California

compensation"). The *Brennan* court accordingly rejected an interpretation of the FLSA that would "require the company to pay overtime not only on what the district court found to be regular salary payments but also on payments found already to include an overtime premium element." *Id.* The Ninth Circuit concluded that the statutory scheme would not be served by requiring employers to pay overtime on payments already including an overtime component.

*Brennan* therefore supports Defendant's contention that it properly excluded from its regular rate calculation that *portion* of the monthly STI bonus based expressly on overtime. *See* Reply Summ. J. at 4–6. Defendant's interpretation of the FLSA also aligns with the U.S. Supreme Court's holding in *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948). The *Bay Ridge* Court read the FLSA as reflecting Congress's intent "to exclude overtime premium payments from the computation of the regular rate of pay." 334 U.S. at 464. The *Bay Ridge* Court reasoned that including these premiums would "allow overtime premium on overtime premium—a pyramiding that Congress could not have intended." *Id.* The Court explained that an "overtime premium" constitutes "extra pay for work because of previous work for a specified number of hours in the workweek or workday," which "Congress intended should be excluded from computation of regular pay." *Id.* at 465.

As in *Brennan* and *Bay Ridge*, obligating Defendant to pay overtime on that portion of the monthly STI bonus linked to overtime would not serve the purposes underlying the FLSA, and by analogy, those sections of the California Labor Code governing payment of overtime wages. Plaintiffs do not dispute that the excluded portion of Strickland's monthly STI bonus was expressly predicated on his earned overtime wages. Nor do Plaintiffs set forth evidence that Strickland understood that component of his STI bonus to be independent of overtime earnings. To the extent that a dispute of *fact* exists, it relates to Plaintiffs' expert having calculated the overtime premium component of Strickland's monthly STI bonus as amounting to $0.217, as opposed to Defendant's value of $0.237. *See* Opp. Summ. J. at 9. As even Plaintiffs recognized at oral argument, any factual dispute regarding this approximate two cent difference is not material. Because Plaintiffs' expert found that Strickland was owed *less* than Defendant's expert, accepting Defendant's calculation would still award Strickland *more* than he was owed for

13

overtime under the statutory scheme.

The Court does not find persuasive the cases Plaintiffs cite in arguing for a contrary conclusion. As Defendant stresses, these decisions do not consider bonuses that are intrinsically linked to overtime hours worked. *See* Reply Summ. J. at 5–6. While Plaintiffs rely on *Marin v. Costco Wholesale Corp.*, that California case is inapposite. *See* 87 Cal. Rptr. 3d 161, 169 (Ct. App. 2008). In *Marin*, the California Court of Appeal did not address the question presented here: whether an employer improperly excluded from its regular rate calculation an overtime bonus premium. *See* 87 Cal. Rptr. 3d at 169. Rather, that court affirmed a bonus plan that already included an overtime premium payment. *See id.* *Marin* also supports that California courts typically look to federal law, since "no California court decision, statute, or regulation governs bonus overtime, the DLSE Manual sections on the subject do not have the force of law, and the DLSE advice letters on the subject are not on point." *Id.* The court in *Marin* concluded that there was "no controlling California authority" apart from general directives. *Id.* Turning then to whether the employer's arrangement violated federal law principles, the court noted that "nothing in the regulation. . . *prohibits* the defendant's method of calculating bonus overtime." *Id.* at 173 (emphasis in original).

The Court therefore concludes that, as a matter of law, Defendant correctly excluded that component of Strickland's monthly STI bonus directly attributable to overtime earnings. Because there is no material factual dispute underlying Strickland's claim for overtime wages, summary judgment is appropriate as to that claim.[7]

### 2. Strickland's Derivative Claims

Defendant next contends that, if the Court grants summary judgment of Strickland's claim for failure to pay overtime wages, the Court should dismiss Strickland's "derivative" second, third, and fifth claims for failure to make payments within the required time, failure to provide proper itemized wage statements, and for unfair competition. *See* Mot. Summ. J. at 18, 21, 23.

---

[7] Given this conclusion. the Court need not resolve Defendant's argument in the alternative that Defendant can properly credit employee overtime from one workweek to another. *See* Mot. Summ. J. at 16–18.

United States District Court
Northern District of California

The Court agrees.  To begin, Plaintiffs label these claims as "*derivative* wage statement and failure to timely pay wage claims" in distinguishing Strickland's overtime wage claims here from those asserted in Strickland's State Action.  *See* Opp. Summ. J. at 5–6 (emphasis added). Plaintiffs do not attempt to argue that Strickland's second or fifth claims can somehow exist apart from Strickland's overtime wage claim.  *See id.* at 19–21.

Plaintiffs do assert that Strickland's third claim for inaccurate wage statements is independent of Defendant's failure to pay overtime.  Plaintiffs, however, merely refer back to Defendant's intentional failure to "issue separate overtime payments relating to the Monthly STI bonus."  *Id.* at 18.  And the only cases that Plaintiffs present concern wages that are, in fact, unpaid.  *See id.* at 17.  Plaintiffs do not argue that anything in California Labor Code § 226, the operative provision, requires Defendant to separate on Strickland's wage statement that portion of the monthly STI bonus based on Strickland's overtime earnings.  Rather, section 226 requires an employer to provide an itemized wage statement showing nine enumerated categories of information, including: gross wages earned, total hours worked, all deductions, net wages, the inclusive dates of the pay period, and all "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."  Plaintiffs do not posit, nor is it likely, that the overtime component of Strickland's monthly STI bonus would fall into this last category: that calculation is not itself an "hourly rate," even though it corresponds to one.

In sum, summary judgment as to Strickland's claims is appropriate based either on res judicata, or alternatively, because no dispute of material fact exists as to whether Defendant properly paid Strickland overtime wages owed.  The Court therefore **GRANTS** Defendant's motion for summary judgment as to Plaintiff Strickland's claims.

### B.  Dismissal of Plaintiff Harris's Seventh Cause of Action under PAGA

Defendant also moves to dismiss Harris's seventh cause of action under PAGA. Specifically, Defendant argues that Harris is collaterally estopped from relitigating her PAGA claim to the extent that it is based on "the same alleged overtime compensation practices"

dismissed with prejudice in the Prior Federal Action.  *See* Mot. Dismiss at 14–15.[8]

### i. Legal Standard

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### ii. Analysis

The Court applies California's collateral estoppel doctrine.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  For that doctrine to apply:

> (1) the issue must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision must have been final and on the merits; and (5) preclusion must be sought against a person who was a party or in privity with a party to the prior proceeding.

*Alvarez v. May Dep't Stores Co.*, 49 Cal. Rptr. 3d 892, 897 (Ct. App. 2006).  Plaintiffs do not dispute that Harris's own overtime wage claim was dismissed with prejudice in the Prior Federal Action.  *See* Opp. Dismiss at 15 & n.6 (disclaiming that Harris seeks to "relitigate her own

---

[8] Defendant also moves to dismiss Harris's PAGA claim based on res judicata, Harris's failure to meet PAGA's administrative exhaustion requirements, and failure to state a claim under Rule 12(b)(6).  The Court need not address these arguments to resolve Defendant's motion.

overtime wage claim"). Rather, Plaintiffs contend that "the Court only decided Harris's individual overtime claim, not the claims of other aggrieved employees." *Id.* at 15 n.6. Plaintiffs assert that Harris is not estopped from "asserting a PAGA claim that alleges unpaid overtime on behalf of others." *Id.*; *see* SAC ¶¶ 57–59. The key issue is consequently whether a plaintiff can bring a PAGA action where she did not personally suffer the alleged underlying labor code violation. The parties do not present any on-point California authority addressing that issue.

Nonetheless, the Court concludes that Harris cannot bring PAGA claims based on labor code violations that she did not personally suffer. Rather, Harris can pursue only those claims that are based on alleged labor code violations that she may have suffered, i.e. those claims that survived summary judgment in the Prior Federal Action. Both the plain text of PAGA and judicial constructions of that statute support that conclusion. PAGA's operative provision, California Labor Code § 2699, allows an "aggrieved employee" to bring a PAGA claim "on behalf of himself or herself *and* other current employees" pursuant to certain statutorily specified procedures. Cal. Lab. Code § 2699(a) (emphasis added). Subsection (c) of that provision defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Taken together, the Court reads these provisions as requiring an employee bringing a representative PAGA action to have experienced the labor code violation of which she complains.

While not cited by the parties, the Court finds instructive *Kim v. Reins Int'l California, Inc.*, 227 Cal. Rptr. 3d 375 (Ct. App. Dec. 29, 2017). Less than two months ago, the California Court of Appeal in *Kim* addressed whether the plaintiff "continued to have standing under the PAGA as an 'aggrieved employee'" after his individual claims were dismissed with prejudice. *See* 227 Cal. Rptr. 3d at 375. Rejecting that construction of the statute, the court held:

> [W]here an employee has brought both individual claims and a PAGA claim in a single lawsuit, and then settles and dismisses the individual employment causes of action with prejudice, the employee is no longer an 'aggrieved employee' as that term is defined in the PAGA, and therefore that particular plaintiff no longer maintains standing under PAGA.

*Id.* Drawing on the statute's legislative history, the *Kim* court found that PAGA was "not intended

1  to allow an action to be prosecuted by any person who did not have a grievance against his or her

2  employer for Labor Code violations." *Id.*  The *Kim* court also relied for its holding on the

3  California Supreme Court's earlier decision in *Arias v. Superior Court*, 209 P.3d 923, 930 (Cal.

4  2009).  In *Arias*, the California Supreme Court explained that actions brought under PAGA are

5  "fundamentally" in the nature of "law enforcement. . . designed to protect the public and not to

6  benefit private parties."  209 P.3d at 930.  Accordingly, because "an aggrieved employee's action

7  under [PAGA] functions as a substitute for an action brought by the government itself, a judgment

8  in that action binds all those, including nonparty aggrieved employees, who would be bound in a

9  judgment in an action brought by the government."  *Id.* at 933.

10  　　　　Considering the sweeping preclusive effect of PAGA as set forth in *Arias*, it would raise

11  serious fairness and justiciability concerns to allow an employee to bind future individuals by

12  asserting, on a representative basis, a harm that she did not personally suffer.  *See Susan B.*

13  *Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (explaining that the standing doctrine's

14  injury in fact requirement "helps to ensure that the plaintiff has a personal stake in the outcome of

15  the controversy") (internal quotation omitted).  While Plaintiffs assert that this hypothetical

16  litigant would still have "skin in the game," common sense belies that claim.  That employee

17  would be unable to recover penalties for the alleged violation of the labor code that she did not

18  experience.  *See Soto v. Motel 6 Operating, L.P.*, 208 Cal. Rptr. 3d, 618, 621 (Ct. App. 2016) ("A

19  court's overriding purpose in construing a statute is to give the statute a reasonable construction

20  conforming to the Legislature's intent. . .") (quotations and alterations omitted).  So construing

21  PAGA would undermine the statute's purpose to provide relief for genuinely aggrieved

22  employees.

23  　　　　Another court in this District has—under nearly identical circumstances—invoked that

24  reasoning to reach the same conclusion.  *See Fobroy v. Video Only, Inc.*, No. C-13-4083 EMC,

25  2014 WL 6306708, at *5 (N.D. Cal. Nov. 14, 2014).  As here, the court in *Fobroy* previously

26  granted summary judgment on several of the plaintiff's wage and hour claims, and denied

27  summary judgment as to others.  Reasoning that "a plaintiff must properly state a viable Labor

28  Code claim" in a PAGA action, the court held that the plaintiff could not assert PAGA claims

18

based on labor code violations that the court dismissed on summary judgment. *Id.* (citing *Arias*, 46 Cal.4th 969 at 987). Nevertheless, the court allowed the plaintiff to pursue PAGA claims based on alleged harms that she may have experienced, i.e. those based on underlying labor code violations that survived summary judgment. *Id.*

Other California federal courts have found similarly. In *Alvarez v. Autozone*, the district court stayed the plaintiff's representative PAGA claims to allow arbitration of his individual wage and hour claims. No. 5:14-cv-02471-VAP-SP (C.D. Cal. Apr. 13, 2015), Dkt. No. 35 at 4–5. The *Alvarez* court reasoned:

> If some of Plaintiff's individual claims were dismissed during arbitration, a different representative would need to bring the dismissed claims under PAGA because Plaintiff could not assert to be an 'aggrieved employee' with respect to those claims as required by the statue.

*Id.* (citing Cal. Lab. Code 2699(a)). And in *Wassnick v. Affiliated Computers Servs.*, the court held that the plaintiff could not base his PAGA claim on labor code violations that he did not experience, even if the plaintiff "ha[d] standing to bring a PAGA claim for other Labor Code violations." 2011 WL 13077358, at *3 (C.D. Cal. Dec. 21, 2011).

While Plaintiffs cite to *Molina v. Dollar Tree Stores, Inc.* as supporting the opposite conclusion, *Molina* aligns with the Court's reasoning. *See* No. CV1201428BROFFMX, 2013 WL 12114758, at *9 (C.D. Cal. Aug. 9, 2013). In *Molina*, the court denied summary judgment as to several of the plaintiff's PAGA claims, finding that there remained "triable facts as to whether or not" the plaintiff was an "aggrieved employee" within the meaning of PAGA. *Id.* Only then did the court state that the plaintiff was not required to "have suffered all PAGA violations for which he seeks to pursue civil penalties." *Id.* (quotation and alterations omitted). The *Molina* court did not provide additional analysis that would favor reading that court's holding more broadly. The other cases on which Plaintiffs primarily rely likewise align with this view, or lack reasoning that favors the opposite result. *See Rope v. Auto-Chlor Sys. of Washington, Inc.,* 163 Cal. Rptr. 3d 392, 406 (Ct. App. 2013) (finding that the plaintiff could not bring a PAGA representative action because not "one violation had been committed against the representative plaintiff"); *Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI-MJ, 2015 WL 2384895, at *5 (E.D. Cal. May 19, 2015)

(concluding that the plaintiff was "not an aggrieved employee for purposes of prosecuting [the] action because none of the violations properly alleged in the [plaintiff's] PAGA claim . . . were committed against her"); *Jeske v. Maxim Healthcare Servs., Inc.*, No. CV F 11-1838 LJO JLT, 2012 WL 78242, at *13 (E.D. Cal. Jan. 10, 2012).

The Court accordingly concludes that Harris can assert her PAGA claim based only on those harms that she may have personally experienced: that is, only those based on underlying labor code violations that survived summary judgment in the Prior Federal Action.

### III.    CONCLUSION

For these reasons, the Court **GRANTS** Defendant's motion for summary judgment as to Strickland's claims, and **GRANTS** Defendant's motion to dismiss Harris's seventh cause of action under PAGA insofar as Harris's PAGA cause of action is based on her claim to overtime wages. As to Harris's PAGA cause of action, the Court's resolution of Harris's overtime wage claim in the Prior Federal Action shows that any corresponding amendment to her PAGA claim would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). To the extent that Harris's PAGA claim is based on Defendant's failure to pay overtime wages, that claim is therefore dismissed **WITHOUT LEAVE TO AMEND**.

Because this order alters the bases for Plaintiffs' motion for class certification, Dkt. No. 85, the Court **SETS** that motion for a hearing on Thursday, April 5, 2018 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated:   2/20/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge