United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STARVONNA HARRIS, et al.,

Plaintiffs,

v.

BEST BUY STORES, L.P.,

Defendant.

Case No. 17-cv-00446-HSG

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE A RESPONSE TO PLAINTIFF'S OBJECTIONS AND REQUEST TO EXCLUDE EVIDENCE, AND DENYING PLAINTIFF'S MOTIONS FOR RELIEF FROM ORDERS OF MAGISTRATE JUDGE**

Re: Dkt. Nos. 85, 94, 95, 118

On January 25, 2018, the Court held a hearing on Jonathan Strickland and Starvona Harris's motion for class certification and Defendant Best Buy Stores, L.P.'s ("Best Buy") motion for summary judgment on Plaintiff Jonathan Strickland's claims. *See* Dkt. Nos. 85 ("Mot."), 91; *see also* Dkt. Nos. 97 ("Opp."), 104 ("Reply"). The Court took the motions under submission, and granted Defendant's motion for summary judgment. Dkt. No. 123 ("Strickland Summary Judgment Order").[1] Also in that order, the Court dismissed Plaintiff Harris's seventh cause of action under the Private Attorneys General Act ("PAGA").

Because the Court's summary judgment order altered the bases for class certification, on April 19, 2018 the Court heard further argument on Plaintiff Harris's class certification motion. *See id.* at 20. After carefully considering the parties' arguments, the Court **DENIES** the motion.

---

[1] The Strickland Summary Judgment Order set forth this litigation's extensive procedural and factual history. This order incorporates those unchanged facts. In this order, the Court only discusses the facts and legal standards as necessary to address the issues raised by Plaintiff's motion for class certification.

1    ## I.    LEGAL STANDARD

2    Plaintiff bears the burden of showing by a preponderance of the evidence that class

3    certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v.*

4    *Dukes*, 564 U.S. 338, 351 (2011).  Class certification is a two-step process.  First, Plaintiff must

5    establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,

6    typicality, and adequacy of representation.  *Id.*  Second, Plaintiff must establish that at least one of

7    the bases for certification under Rule 23(b) is met.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33

8    (2013).  Where, as here, Plaintiff seeks to certify a class under Rule 23(b)(3), Plaintiff must show

9    that "questions of law or fact common to class members predominate over any questions affecting

10   only individual members, and that a class action is superior to other available methods for fairly

11   and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

12   "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

13   with the merits of the plaintiff's underlying claim.'"  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,

14   568 U.S. 455, 465–66 (2013) (quoting *Wal–Mart*, 564 U.S. at 351).  Nevertheless, Rule 23 does

15   not permit "free-ranging merits inquiries at the certification stage."  *Id.* at 466.  "Merits questions

16   may be considered to the extent—but only to the extent—that they are relevant to determining

17   whether the Rule 23 prerequisites for class certification are satisfied."  *Id.*  If a court concludes

18   that the moving party has met its burden of proof, the court has broad discretion to certify the

19   class.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on*

20   *denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

21   ## II.    ANALYSIS

22   Plaintiff's putative class comprises "Defendant's non-exempt employees who were

23   employed in California during the period from four years prior to the filing of the Prior Federal

24   Action (February 11, 2011) until this Court's order granting class certification who fall within one

25   or more of the following subclasses. . . ."  Dkt. No. 55 ("SAC") at 6–7.[2]  At the April 19 hearing,

26

---

27   [2] "The Prior Federal Action" refers to Harris's first suit against Defendant, Case No. 4:15-cv-
     00657-HSG.  In the Prior Federal Action, the Court found that material disputes of fact precluded
28   summary judgment on Plaintiff's claim for "failure to provide itemized wage statements" in
     violation of California Labor Code Section 226, and her claim for "failure to pay wages within

1  the parties agreed that only two putative subclasses remained following the Strickland Summary

2  Judgment Order: a "Wage Statement Subclass" and a "Waiting Time Subclass." *See id.* The

3  Wage Statement Subclass comprises:

4  > [A]ll nonexempt individuals employed by DEFENDANT in
   > California who received wage statements containing one or more
5  > "Previous Period Hrs" entries, (2) all members of the Overtime
   > Wage Subclass, and (3) all non-exempt individuals employed by
6  > DEFENDANT in California who received wage statements listing
   > hours worked that do not match the hours worked in their time
7  > records for the same pay periods [during the applicable limitations
   > period].
8

9  *Id.* at 7.[3] Plaintiff's Waiting Time Subclass includes, in relevant part: "all non-exempt individuals

10 formerly employed by DEFENDANT in California who either did not receive their final hourly

11 wages on the date their employment was terminated or within 72 hours of their resignation" during

12 the applicable limitations period. *Id.* The Court addresses the adequacy of each putative subclass

13 under Rule 23.

14     **A.    Wage Statement Subclass**

15     The parties generally agree on the systems and procedures that Defendant uses to produce

16 wage statements. To track employee hours worked, Best Buy maintains a time entry system called

17 the Time and Labor Center ("TLC"). Mot. at 2; Opp. at 10; *see* Dkt. No. 97-1 ("Compendium of

18 Evidence" or "CE") at 317. The TLC requires managers to approve certain time entries input by

19 employees, referred to as "timesheet exceptions." CE at 318–19. Timesheet exceptions can

20 include manually input time entries and corrections to prior time entries. *See id.* Other timesheet

21 exceptions include:

22 > (1) [P]unching in 15 minutes early for a scheduled shift; (2)
   > punching out more than one hour later than a scheduled shift; (3)
23 > missing a punch in sequence or punching out of sequence, such as
   > when an employee accidentally hits a start meal button instead of a
24 > clock in button; (4) working a shift that was not scheduled; (5)

25 _____

26 [the] required time in violation of California Labor Code Sections 201, 202, and 203. *See* Dkt.
   No. 102 ("Harris Summary Judgment Order"), Case No. 4:15-cv-00657-HSG. In this litigation,
27 Plaintiff seeks to represent subclasses corresponding to those claims.
   [3] As mentioned, the Strickland Summary Judgment Order mooted Plaintiff's Overtime Wage
28 Subclass. The Court in this order therefore does not analyze that component of either Plaintiff's
   Wage Statement Subclass, or her Waiting Time Subclass.

3

1
2

> working when a Time Off Request Form is not submitted before a schedule is issued; (6) punching in or out or starting or ending a meal period using the wrong date; and (7) punching out at midnight and punching back in after midnight.

3  *See* Mot. at 2; Opp. at 10–11; CE at 318–19. The TLC does not require managers to approve non-

4  timesheet exceptions (i.e., those that can be input using buttons "to clock on for a shift, to clock

5  out for a meal period, to clock in from a meal period and clock out at the end of a shift"). Mot. at

6  2; CE at 318.

7  TLC time entries determine how much an employee is paid and when. Best Buy's pay

8  periods are two weeks, and Best Buy's work week is Sunday (12:00 am) to Saturday (11:59 pm).

9  Opp. at 11; CE at 457. It is an employee's responsibility to ensure that "their time records are

10  complete, accurate and authorized by 5:00 pm (local time) on Sunday." Opp. at 11; CE at 319–

11  320. If a timesheet exception lacks approval by 5:00 pm Central Time on the Monday following

12  the end of a payroll week, the corresponding time entry will not be paid on the Friday pay date for

13  that pay period. Opp. at 11; Mot. at 4; CE at 320. Those time entries appear on the following

14  wage statement as "Previous Period Hrs." Opp. at 11; Mot. at 4.

15  Plaintiff contends that the "Previous Period Hrs." wage statement entry is misleading.

16  According to Plaintiff, this entry prevents Best Buy employees from determining "whether the

17  hours were worked and the wages were earned in the prior pay period or an earlier pay period."

18  Mot. at 4. Plaintiff claims that the TLC's deficiencies are further compounded by other procedural

19  inadequacies, including Best Buy's failure to: (1) instruct employees to use automatic entry

20  buttons and/or correct missing or inaccurate entries; (2) provide adequate instruction regarding

21  which entries might trigger delayed approval; or (3) instruct mangers that they need to approve

22  timesheet exceptions without delay. *Id.* at 3.

23  In response, Defendant contends that Plaintiff's Wage Statement Subclass cannot satisfy

24  Rule 23's commonality and predominance requirements. To begin, Defendant claims that the

25  "Previous Period Hrs." entry does not itself violate California Labor Code Section 226. Opp. at

26  13–14. Defendant stresses that Plaintiff cannot show, as she must, that Defendant's violation was

27  knowing and intentional. *Id.* at 15–16. Defendant argues that discerning the question of intent on

28  these facts requires adjudicating "thousands of distinct decisions" made by Defendant's employees

4

1    and managers with respect to when a timesheet exception was approved, and why that approval

2    may have been delayed. Opp. at 13–16.

3           The Court agrees with Defendant. As set forth in the Prior Federal Action, California

4    Labor Code Section 226 "requires an employer at the time that wages are paid to provide an

5    accurate itemized statement that contains nine items." *See infra* n.2; Harris Summary Judgment

6    Order at 13. Those nine categories of information include, in relevant part, gross wages earned,

7    total hours worked, net wages earned, "the inclusive dates of the period for which the employee is

8    paid," and all "applicable hourly rates in effect during the pay period and the corresponding

9    number of hours worked at each hourly rate by the employee . . . ." *See* Cal. Lab. Code § 226.

10   "To recover under § 226(e), a plaintiff must show: (1) a violation of § 226(a) that (2) was knowing

11   and intentional, and (3) an injury suffered as a result of the violation." Harris Summary Judgment

12   Order at 13. A "knowing and intentional violation" occurs when the employer actually knows that

13   it has omitted from a pay statement any item required by § 226(a). *See id.* A knowing and

14   intentional failure "does not include an isolated and unintentional payroll error due to a clerical or

15   inadvertent mistake." Cal. Lab. Code § 226(e)(3).

16          Here, Plaintiff fails to set forth how she could show, on a classwide basis, that Best Buy

17   managers knowingly and intentionally delayed their approval of timesheet exceptions. To meet

18   Rule 23(a)'s commonality requirement, Plaintiff's wage statement claim "must depend upon a

19   common contention. . . capable of classwide resolution—which means that determination of its

20   truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

21   stroke." *Dukes*, 564 U.S. at 349. As the *Dukes* Court stated, the commonality analysis is

22   "rigorous." *Id.* at 350. Plaintiff accordingly cannot assert "any common question"—rather, she

23   must define a question that "will produce a common answer" to the question driving the resolution

24   of the litigation. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*,

25   564 U.S. at 349). That question in this case is whether Defendant's managers knowingly and

26   intentionally failed to timely approve timesheet exceptions. Notably, Plaintiff fails to show that

27   Best Buy, as a corporate actor, knew or intended for timesheet exceptions to be approved late.

28   Plaintiff also fails to present evidence demonstrating that Best Buy otherwise sought to mislead

5

1    employees as to their hours worked and wages earned through the Previous Period Hrs. entry.

2          Partly as a consequence, answering Section 226's liability inquiry requires individual

3    examination of numerous context-specific factors.  Those factors include the circumstances in

4    which an employee entered a timesheet exception, when the manager approved the exception, and

5    why the manager failed to timely approve the exception.  To discern each of these factors, a

6    factfinder needs to evaluate the mental state and conduct of, and perhaps even the relationship

7    between, the relevant manager and employee.  *See* Opp. at 16; *Dukes*, 564 U.S. at 351 (rejecting

8    that a putative class member can "sue about literally millions of employment decisions at once").

9          Contributing to the difficulty of classwide proof is the decentralized nature of entering and

10   approving hours worked at Best Buy.  Considering that the TLC gives employees and managers

11   some discretion in how to enter and approve timesheet exceptions, liability will in most cases

12   hinge on individualized assessments of the conduct of particular employees.  As mentioned,

13   Plaintiff fails to present evidence that Best Buy, at the corporate level, knowingly or intentionally

14   administered the TLC so as to violate Labor Code Section 226.  *See* Dukes, 564 U.S. at 353

15   (noting that the plaintiffs lacked "significant proof" that the defendant operated under a generally

16   unlawful policy).  Defendant, in contrast, presents evidence that 99.6% of the checks issued during

17   the class period did not include a Previous Period Hrs. entry.  Time entries were accordingly

18   approved without delay in the vast majority of cases.  In ".14% of the total checks" issued during

19   the class period (i.e., 2,177 out of 1,576,198 total checks), the Previous Period Hrs. entry appeared

20   where an employee appropriately entered their time before the end of the pay period, but the

21   manager failed to timely approve the entry.  Mot. at 11; CE at 24, 32–33.[4]

22         In the absence of evidence showing liability on a systematic basis, Plaintiff cannot satisfy

23   Rule 23(a)'s commonality requirement.  The *Dukes* court rejected the premise that providing

24   "local supervisors" with discretion comprises a "uniform employment practice."  564 U.S. at 356.

25   As in *Dukes*, Plaintiff here has not presented evidence of a "common mode of exercising

26   discretion that pervades the entire company."  *Id.*  Rather, it will be up to the trier of fact to find on

27

28
_____

[4] Plaintiff's objection to the Reardon Report, *see* Dkt. No. 108 at 1, is addressed below.

United States District Court
Northern District of California

1    a case-by-case basis why a Best Buy manager failed to timely approve an employee's timesheet

2    exception. *See* Opp. at 12-13.[5]  In that regard, Defendant presents numerous examples of

3    unintentional late approvals arising, for instance, from miscommunication between managers and

4    employees, unexplained absences, human error, vacation, sickness, and confusion among

5    managers as to who was responsible for approving a particular time entry. *See* CE at 672, 677,

6    703, 707, 723, 736, 749, 779, 784.  Other California district courts have rejected class claims in

7    analogous circumstances. *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-1136 RPLAX,

8    2006 WL 4393465, at *4 (C.D. Cal. Sept. 7, 2006) (finding that the "bulk of the issues" "truly in

9    dispute" were "inherently individualized" because there was no evidence to support that the

10   defendant had an unlawful "systematic policy or practice," and because the "precise manner and

11   circumstances" in which the defendant administered the relevant policy could "vary from account

12   to account").

13           Plaintiff does not expressly dispute that late approvals can result from error or

14   unintentional conduct.  Rather, Plaintiff argues that this conclusion requires the Court to make an

15   inappropriate finding on the merits.  But *Dukes* clarified that a rigorous commonality analysis

16   "will entail some overlap with the merits of the plaintiff's underlying claim." 564 U.S. at 351.

17   Though Plaintiff claims that the commonality showing is "minimal," virtually all of the authorities

18   cited Plaintiff predate *Dukes*. *See* Mot. at 13.

19           Even if Plaintiff's putative subclass could satisfy Rule 23's commonality requirement, it

20   would not survive under its predominance requirement.  Under Rule 23(b)(3), "the separate

21   adjudication of each class member's individual claim or defense" renders certification

22   inappropriate. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.), *opinion*

23   *amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001) (finding causation and damage

24   determinations could present "triable individualized issues" unsuitable for class treatment despite

25   the possibility of common issues pertaining to the defendant's liability).  "[T]he main concern in

26

27   _____

28   [5] Plaintiff claims that 5,012 employees entered timesheet exceptions before the Monday cutoff but
     failed to get timely approval. *See* Mot. at 5–6.  Even if the Court accepted Plaintiff's statistic,
     Plaintiff's claim would still fail for lack of common proof as to Defendant's intent.

7

1    the predominance inquiry" is "the balance between individual and common issues. *In re Wells*

2    *Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (finding that the

3    district court abused its discretion in certifying a class based on a uniformly applied exemption

4    policy, by disregarding "the existence of other potential individual issues that may make class

5    treatment difficult if not impossible"). In striking that balance, the Court searches for some

6    "common proof" to dispose of "otherwise individualized issues," and thereby facilitate judicial

7    economy. *Id.* at 958.

8            As mentioned, Plaintiff does not present evidence suggesting that Best Buy knowingly or

9    intentionally instructed or encouraged managers to unlawfully delay their approval of timesheet

10   exceptions. *See Pryor v. Aerotek Scientific, LLC,* 278 F.R.D. 516, 531 (C.D. Cal.2011) (collecting

11   cases, and concluding that "[t]he predominance requirement is more likely to be satisfied when the

12   conduct complained of is the result of a common practice by the employer, and when the

13   individualized inquiries that will be required concern class members' damages if the employer is

14   found liable"). Contrary to Plaintiff's suggestion, nothing about the TLC system on its own is

15   unlawful or inadequate under Section 226. *See* Mot. at 21. Rather, "the questions susceptible of

16   classwide proof" (for instance, whether an employee's pay statement includes the Previous Period

17   Hrs. entry) offer limited answers as to Defendant's liability. *See Pryor*, 278 F.R.D. at 533.

18   Plaintiff provides no aggregate method for determining the issue of intent, which Defendant's

19   records cannot show on their own. Thus, the factfinder will need to determine in each case the

20   conduct and circumstances giving rise to a delayed approval.

21           Plaintiff's own authorities recognize that these "individualized inquiries" are inappropriate

22   for certification under Rule 23(b)(3), and would "bog down the action in a series of 'mini-trials.'"

23   *See* Mot. at 20 (citing cases); *Torres v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 403 (C.D. Cal.

24   2014) (quoting *Pryor,* 278 F.R.D. at 536). For instance, in *Torres*, the court found that Rule

25   23(a)'s commonality requirement was satisfied because the liability inquiry reduced to whether the

26   defendant's uncompensated time off policy complied with a municipal living wage ordinance. *See*

27   300 F.R.D. at 403. Nonetheless, the court concluded that certification of this class claim was

28   inappropriate under Rule 23(b)(3) because "whether a given Class member suffered any injury due

8

the policy, in the event it is found unlawful, [would require] an individualized assessment." *Id.*

That injury assessment would, as here, necessitate inquiry "into whether each member was denied

uncompensated time off, the reasons for the Class member's request, whether the reason for the

request was sufficiently related to illness, when the request was made, and the context in which the

request was presented to the supervisor." *Id.*[6] Plaintiff's other authorities likewise presume the

existence of some common proof, which is absent here. *Cf. Taylor v. Fedex Freight, Inc.*, No. 13-

CV-1137-LJO-BAM, 2015 WL 2358248, at *15 (E.D. Cal. May 15, 2015) (holding that the

predominance requirement was satisfied by evidence of the defendant's "uniform piece-rate

compensation policy that fail[ed] to separately compensate truck drivers for required activities");

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 490 (E.D. Cal. 2006) (certifying a class

in part because deciding any individual issues could "likely be determined with reference to

timecards and payroll records" and would therefore be "relatively straightforward"). Given that

individual liability issues will predominate over common concerns, the Court concludes that

certification of the Wage Statement Subclass is inappropriate.

### B. Waiting Time Subclass

The Court turns next to Plaintiff's putative Waiting Time Subclass. As set forth in the

Prior Federal Action, there are three key provisions of the California Labor Code. Section 201

states: "If an employer discharges an employee, the wages earned and unpaid at the time of

discharge are due and payable immediately." Cal. Lab. Code § 201(a). Section 202 continues: "If

an employee not having a written contract for a definite period quits his or her employment, his or

her wages shall become due and payable not later than 72 hours thereafter . . . ." *Id.* § 202(a).

Finally, California Labor Code § 203 provides:

> If an employer *willfully* fails to pay, without abatement or reduction,
> in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and
> 205.5, any wages of an employee who is discharged or who quits,
> the wages of the employee shall continue as a penalty from the due

---

[6] Though the *Torres* court proceeded to find that the plaintiffs' claim for inaccurate wage
statements satisfied Rule 23, the court (1) did not consider the question of intent, and (2) found
that putative class members could provide common proof to support their alleged wage statement
claim in the form of the defendant's payroll records. *See* 300 F.R.D. at 403–04. For the reasons
discussed, Defendant's payroll records here are insufficient to show intent.

> date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203 (emphasis added). In analyzing Harris's individual claim for untimely payment, the Court in the Prior Federal Action concluded that there were genuine factual disputes as to whether: (1) Harris resigned voluntarily or was terminated; (2) Harris timely received her wages on September 15, 2014, or received them late on September 16, 2014; and (3) there was a good faith dispute regarding wages owed that would preclude Harris's ability to recover. Harris Summary Judgment Order at 11–12.

With respect to this putative subclass, the parties at least agree that the following procedures govern the termination of Best Buy employees. For involuntary terminations, the responsible manager contacts an individual from Defendant's Employee Relations ("ER") department to issue an "Involuntary Separation Notice" ("ISN"). The ISN provides a termination date, the reasons for the employee's termination, and signature and signature date lines for the manager and employee. Mot. at 8; *see* CE at 256. An online "Manual Pay Request" ("MPR") is then created for the employee's final wages. *Id.* The MPR draws time entries from the TLC. CE at 256. ER therefore asks the responsible manager to ensure that all time in the TLC is up to date through the date of the MPR. *Id.* The MPR provides: (1) whether the termination was involuntary or voluntary; (2) the termination date; and (3) whether the final payment would be made by direct deposit or paper check and, if the latter, where the paper check would be mailed. *Id.* The MPR is sent to Defendant's Payroll Department. *Id.* A manager then obtains the requisite signatures for the ISN and faxes the completed ISN to ER. Mot. at 8; CE at 257. Following that, an ER Coordinator enters the termination date into Oracle. *Id.*

Defendant's system for processing voluntary terminations differs slightly. Upon learning of a resignation, a manager processes the MPR. Mot. at 8; CE at 258. The MPR states the nature of the termination (voluntary or involuntary), the termination date or final day worked, and the form of final payment (direct deposit or check by mail). *Id.* The manager also completes a Voluntary Separation Notice ("VSN"), which is similar to an ISN. *Id.* The MPR is transmitted to the Payroll Department. The date of termination entered in Oracle is the date last worked (or the

10

1  resignation date) listed in the MPR.  Mot. at 8; CE at 258.

2      As for issuing final pay, the same general process pertains to voluntary and involuntary

3  terminations.  Those MPRs received between noon on business day one and business day two are

4  processed for payment on business day two.  Opp. at 18.  The paydate recorded in the payroll

5  system is business day three.  *Id.*; *see* CE at 458–59.  Direct deposit instructions are delivered on

6  the evening of business day two.  *Id.*  If the employee has requested a live check, the check is

7  overnight mailed on business day two for receipt on the next calendar day.  *Id.*

8      According to Plaintiff, the aforementioned procedures are deficient in that they "do not

9  inform managers and other employees when final wages must be paid to employees. . . ." *Id.* at 7.

10  Plaintiff asserts that understaffing contributes to Defendant's poor record keeping practices, and

11  has "resulted in hundreds of employees not receiving timely final wages."  Mot. at 14; Reply at

12  13.  In response, Defendant claims that its training to managers is adequate and complies with

13  California law.  Opp. at 18.  Defendant submits evidence, including employee declarations and

14  training materials, to show that it instructs managers on the following three pay requirements: (1)

15  involuntary terminations must be paid immediately; (2) voluntary terminations with 72 hours'

16  notice must be paid immediately; and (3) any other voluntary termination must be paid within 72

17  hours of receiving notice.  *See id.*; CE at 255–56, 287, 736.  Defendant contends that its actual pay

18  practices reflect those instructions.  Opp. at 18.[7]

19

20  [7] Plaintiff filed two related requests for exclusion of evidence submitted by Defendant.  *See* Dkt.
Nos. 108, 109.  In her second request, Plaintiff asks the Court to exclude all of Defendant's

21  evidence relating to ISNs, VSNs, and Manual Pay Requests ("MPRs") due to Defendant's alleged
failure to produce or disclose these documents during discovery.  *See* Dkt. No. 109 at 1.

22  Defendant requested leave to respond to Plaintiff's request to exclude this evidence, Dkt. No. 118.
The Court **GRANTS** Defendant's request, and **DENIES** Plaintiff's request.  Plaintiff had

23  adequate notice of the relevant declarants such that Plaintiff was not prejudiced by Defendant's
submission of related evidence in its supplemental disclosures.  *See* Dkt. No. 118-1 at 2-3, 5-6;

24  Dkt. No. 118-2 (providing the names of specific Best Buy managers); *Intel Corp. v. VIA Techs.,
Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001) ("[W]hen a fact witness is disclosed, all parties are on

25  notice that the disclosing side contends the witness has relevant knowledge. . . . All parties are
free to contact the fact witness and obtain their own statements.").  The Court, moreover, agrees

26  with Defendant that this ruling (finding that the questions posed by Plaintiff are too individualized
to warrant classwide treatment) would not change were certain employee-specific documents

27  excluded.  *See* Dkt. No. 118-1 at 4.  Furthermore, Plaintiff acknowledges that Magistrate Judge
Westmore already ruled on these issues during discovery.  Dkt. No. 109 at 1.  To that end, the

28  Court finds Judge Westmore's rulings on Defendant's need to produce all MPRs, Dkt. Nos. 89,
and employee contact information well-reasoned and not clearly erroneous or contrary to law.  *See*

11

1    This putative subclass also fails under Rule 23(a).  Plaintiff does not identify a general

2  policy maintained by Best Buy that resulted in late payments, or some method for sampling

3  records to provide common proof that individual Best Buy managers acted unlawfully on a

4  systemic basis.  *See Dukes*, 564 U.S. at 351.  "While commonality may be established based on a

5  pattern of officially sanctioned illegal behavior, merely pointing to a pattern of harm, untethered to

6  the defendant's conduct, is insufficient."  *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*,

7  867 F.3d 1093, 1104 (9th Cir. 2017) (concluding that the district court did not abuse its discretion

8  in finding that a class lacked commonality because the plaintiff failed to set forth evidence of a

9  non-compliant policy) (internal quotations and alterations omitted).  Not only does Defendant

10  present sufficient proof that its training program is adequate, but also shows that individual and

11  unintentional payroll discrepancies preclude the type of common proof required for class

12  certification.  *See* Opp. at 19.  For instance, Oracle termination dates and payroll records can

13  differ, obscuring when a terminated employee received his or her final pay.  *Id.* at 19–20; *see* CE

14  at 262–64.  Discrepancies can also arise where a manager forgets to remove an employee from the

15  TLC system after ER inputs their ISN.  *See* Opp. at 18–19; CE at 256–258.  In those instances,

16  employees receive a duplicate payment for hours already paid.  *Id.*  Defendant claims, and Plaintiff

17  does not dispute, that Best Buy would not be liable for late payment in those cases.  Opp. at 18–

18  19.  Furthermore, Defendant provides numerous examples of duplicative payments, or allegedly

19  late payments that were actually paid on time.  *Id.*

20

---

21  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  The Court accordingly **DENIES**
22  Plaintiff's motions for relief from these non-dispositive orders, *see* Dkt. Nos. 94-95.  To the extent
that Plaintiff raises other evidentiary objections, Dkt. No. 108, the Court **DENIES** Plaintiff's
23  request.  Declarants Laura Flint and Bonnie Nelson possess personal knowledge of the subjects
opined upon in their respective statements.  *See* Dkt. No. 97-4 ("Flint Decl."); Dkt. No. 97-7
24  ("Nelson Decl.").  Though Plaintiff identifies one hearsay statement in Nelson's declaration, the
Court does not rely on that statement.  *See* Dkt. 108 at 3; CE 458 ¶ 7 ("[W]e hear, however, that
25  some institutions deposit as early as Wednesday. . . .").  Plaintiff does not specifically identify any
hearsay statements in Flint's declaration.  *See* Dkt. No. 108 at 2.  With regard to Plaintiff's
26  objections to the Reardon Report, Dkt. No. 108 at 1, Plaintiff does not explain her objections or
provide any corresponding line citations.  The Court finds that the limited portions relied upon are
27  not improper.  The Court's ruling does not depend on the remainder of the evidence that Plaintiff
cites as objectionable.  In addition to Plaintiff's objections, Defendant also objected to evidence
28  submitted by Plaintiff.  *See* Dkt. Nos. 98, 99, 100.  The Court does not rely on this evidence in
reaching its ruling, and **DENIES AS MOOT** Defendant's requests to exclude this evidence.

1    These examples illustrate that resolving each allegation will require an individualized

2    assessment of each employee's time records, wage statements, and deposition testimony.  *See* CE

3    at 257, 262–63.  California district courts have rejected requests for certification on similar

4    grounds.  *See Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010) (denying

5    certification because the defendant maintained a "facially compliant policy" and the plaintiff's

6    putative class required "individualized assessment of why employees did or did not take meal

7    breaks"); *Pedroza v. PetSmart, Inc.*, No. ED CV 11-298-GHK, 2013 WL 1490667, at *8 (C.D.

8    Cal. Jan. 28, 2013) (declining to certify a class despite the existence of a common training

9    program in part because the defendant's records provided "only piecemeal information" of the

10   alleged wrongdoing).  To the extent that Best Buy's payroll records contain discrepancies, that

11   itself is not evidence of non-compliance with any particular labor code section.  Plaintiff cites no

12   authority suggesting that Best Buy is liable under California Labor Code Sections 201, 202, or 203

13   for these individual errors, or for allegedly understaffing the relevant processing departments.

14   Even if Plaintiff could present a common question to satisfy Rule 23(a), the Court

15   concludes that individual issues predominate over common ones pursuant to Rule 23(b)(3).

16   Plaintiff does not dispute that her expert, to assess the number of untimely payments, simply

17   identified instances in which an employee's Oracle termination date occurred before their final

18   payout as recorded by Best Buy's Payroll Department.  *See* Opp. at 24; Reply at 12–15.  Based on

19   that analysis, Plaintiff claims that "[o]ne simply needs to compare the termination date with the

20   final payment date" for common proof of untimely payments.  Reply at 14.  Plaintiff's position

21   ignores numerous other factual findings required to show liability, including: (1) whether the

22   employee voluntarily or involuntarily resigned; (2) the information in the employees' ISN or VSN

23   and their MPR; (3) the day of the week the final payment was due; (4) what days were actually

24   worked and when; (5) when the final pay was processed, how that pay was delivered, and, if the

25   payment was a direct deposit, when the individual's financial institution deposited that pay.  *See*

26   *id.*

27   Harris's claim in the Prior Federal Action is exemplary in this respect.  As the Court

28   observed there, a claim for untimely payment under these circumstances entails evaluating how

13

1    much Defendant owed that employee for hours worked, when they were paid, how many hours the

2    employee actually worked, whether the employee was voluntarily or involuntarily terminated, and

3    the method of payment. *See* Harris Summary Judgment Order at 13. Individual testimony will in

4    many instances be required to assess the claim of each putative subclass member. Plaintiff

5    accordingly fails to provide "common evidence to support extrapolation from individual

6    experiences to a class wide judgment that is not merely speculative." *Marlo v. United Parcel*

7    *Serv., Inc.*, 639 F.3d 942, 945 (9th Cir. 2011) (holding that the district court did not abuse its

8    discretion in decertifying a class where the plaintiff failed to provide common proof to support his

9    allegation that 1200 employees were unlawfully misclassified as exempt). Plaintiff's authorities

10   can be distinguished based on this lack of common policy or proof. *See* Reply at 14–15; *cf.*

11   *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 426 (N.D. Cal. 2008), *vacated*, No. CV 05-4432 CRB,

12   2009 WL 3320489 (N.D. Cal. Oct. 9, 2009), *aff'd,* 410 F. App'x 24 (9th Cir. 2010) (certifying a

13   timely payment class partly because the plaintiff planned to challenge a general practice "of not

14   cutting final checks until after an employee's shift," and liability could be determined by reference

15   to the defendant's records); *Romero*, 235 F.R.D. at 490 (approving a class because key liability

16   questions could be resolved with "reference to a sample of several employees" "given the

17   purported uniformity of [employees'] activities").

18        For instance, in *Brewer v. General Nutrition Corp.*, the district court certified a timely pay

19   subclass based on evidence of "a policy suggesting that [the defendant] was willful in its efforts to

20   circumvent [a] statute's requirements of immediate payment at the time of discharge by including

21   a period of suspension to allow its payroll department to prepare a final paycheck." 2014 U.S.

22   Dist. LEXIS 159380, *35. Considering that evidence, and statistics showing a systematic failure

23   by the defendant to pay upon discharge, the court concluded that "the liability question for

24   involuntary terminations presents a corporate-level issue amenable to class treatment." *Id.*

25   (quotations omitted); *see* Reply at 15. But here, the only "uniform policies or practices" to which

26   Plaintiff expressly refers pertain to Defendant's failure to pay overtime on Monthly STI bonuses, a

27

28

14

1    claim that Harris lacks standing to bring.[8]  And even if Plaintiff is correct that employees

2    terminated from 2015 to 2017 received late payments in in one third of cases ("approximately

3    3,000 out of 10,750 employees"), Plaintiff presents no way of aggregating these accounts to

4    provide proof susceptible to class wide treatment.  Reply at 13.  Determining whether Defendant's

5    managers timely authorized individual payments will require discrete determinations that fail to

6    achieve the judicial economy benefits of class actions.  The Court declines to certify the Waiting

7    Time Subclass under Rule 23(b)(3).

8    **III.    CONCLUSION**

9        For these reasons, the Court **DENIES** Plaintiff's motion for class certification, **GRANTS**

10   Defendant's motion for leave to file a response to Plaintiff's objections and request to exclude

11   evidence, and **DENIES** Plaintiff's requests for relief from the non-dispositive orders of Magistrate

12   Judge Westmore.  The Court **SETS** a further case management conference ("CMC") for Tuesday,

13   September 11, 2018 at 2:00 p.m. to discuss remaining issues and a case schedule.  A joint CMC

14   statement is due by Tuesday, September 4, 2018.

15       **IT IS SO ORDERED.**

16   Dated:  8/16/2018

17
                                            _____
18                                           HAYWOOD S. GILLIAM, JR.
                                            United States District Judge
19

20

21

22

23

24

25

26

27

28   [8] As mentioned, the Court in the Prior Federal Action granted summary judgment on Harris's
     claim for failure to pay overtime wages.  *See* Dkt. No. 124.

                                            15